IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

RECYC SYSTEMS SOUTHEAST, LLC, *

    Plaintiff, *

vs. *

    CASE NO. 4:17-CV-225 (CDL)

FARMLAND MUTUAL INSURANCE *
COMPANY,
 *
    Defendant.
 *

O R D E R

Property owners near a smelly holding pond maintained by Recyc Systems Southeast, LLC ("Recyc") sued Recyc in Alabama state court for property damage allegedly caused by the odors emanating from the pond. Recyc tendered the lawsuit to its insurer, Farmland Mutual Insurance Company ("Farmland"), for defense and indemnification. Farmland refused to defend Recyc in that action, taking the position that the claims asserted in that lawsuit are excluded by the policy's pollution exclusion. Recyc subsequently filed the present action against Farmland in Georgia state court, alleging claims for breach of contract, declaratory relief, and specific performance. Having properly removed that action to this Court, Farmland now moves for judgment on the pleadings, arguing that the claims in the underlying action are excluded from coverage under the policy as

a matter of law.  For the reasons explained in the remainder of this Order (ECF No. 9), Farmland's motion is granted.

## MOTION FOR JUDGMENT ON THE PLEADINGS STANDARD

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).  The Court "must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party."  *Id.*  Additionally, the Court may consider documents attached to the complaint because such documents are "part of the [complaint] for all purposes." Fed. R. Civ. P. 10(c).  And when specific factual details contained in a document attached to a complaint contradict the general allegations of the pleading, the document governs.  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007) (stating that dismissal of a complaint is warranted if a document attached to a complaint forecloses recovery as a matter of law).

## STATEMENT OF FACTS

Viewing Recyc's Complaint and the documents attached thereto in the light most favorable to Recyc reveals the following facts:

**I.   Recyc's Business & the Insurance Policy**

Recyc obtains nutrient-rich water disposed of by poultry plants in Alabama and applies the water to local farmland as a type of liquid fertilizer.  Am. Compl. ¶ 2, ECF No. 7.  Before it applies the water to the farmland, Recyc stores the water in a holding pond that it maintains.  *Id.*

Defendant Farmland issued a commercial general liability policy to Recyc ("Policy").  *Id.* ¶ 3; *see generally* Policy, ECF No. 7-1.  The Policy describes Recyc's business as a "custom fertilizer application."  Policy, ECF No. 7-1 at 22.  The Policy generally covers "'property damage'. . . caused by an 'occurrence' that takes place in the 'coverage territory' . . . during the policy period."  *Id.* at 25.  The Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property" and "[l]oss of use of tangible property that is not physically injured."  *Id.* at 39.

The pollution exclusion in the Policy states that "[t]his insurance does not apply to . . . 'property damage' arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants.'"  *Id.* at 26-27.  "Pollutants" are defined as "[a]ny organic or inorganic substance or material that is a solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to:

3

smoke, vapor, soot, dust, fumes, acids, alkalis, chemicals, fibers, particles, sludge, by-products, biofuels, herbicides, pesticides, insecticides, fertilizers, and all other similar chemicals, and waste." *Id.* at 60. The pollution exclusion further specifies five circumstances in which it applies, two of which are relevant here. First, paragraph (1)(a) of the exclusion excludes coverage when the injurious pollutants originate "from any premises, site or location which is . . . rented" to the insured. *Id.* at 27. Second, paragraph (1)(d) excludes coverage when the pollutants originate "from any premises, site or location on which [the] insured . . . [is] performing operations if the 'pollutants' are brought on or to the premises, site or location, in connection with such operations by such insured." *Id.* Recyc purchased an additional Herbicide, Pesticide or Fertilizer Applicator Coverage endorsement which states, "Paragraph (1)(d) of the [pollution exclusion] does not apply to . . . 'property damage' arising out of the application of herbicides, pesticides, fertilizers, or other similar chemicals" ("fertilizer application endorsement"). *Id.* at 62. Otherwise, the pollution exclusion "applies even if the 'pollutants' have a function in [the insured's] business, operations, premises, site or location." *Id.* at 60.

**II. The Alabama Lawsuit**

Owners and occupants of property near Recyc's holding pond ("Alabama plaintiffs") sued Recyc and others in the Circuit Court of Marshall County, Alabama. The Alabama plaintiffs allege in that action that "Tyson Chicken, Inc. (Tyson) contracts with [Recyc] for [Recyc] to remove certain chicken waste by-products from Tyson's Albertville chicken processing facility . . . and to store said waste in an open air pond located on [land leased to Recyc]" and that Recyc "allowed noxious odors to emanate from the waste pond and travel onto [the Alabama plaintiffs'] property, thereby interfering with [the Alabama plaintiffs'] use and enjoyment of their property." Ala. Compl. ¶¶ 3 & 6, ECF No. 7-2. Recyc tendered the lawsuit to Farmland, but Farmland denied coverage and refused to defend Recyc. Am. Compl. ¶¶ 7 & 8. The Alabama lawsuit remains pending. *Id.* ¶ 6.

## DISCUSSION

Recyc alleges that Farmland breached the Policy when it denied coverage. Recyc seeks damages for breach of contract, a declaration that coverage exists under the Policy, and specific performance requiring Farmland to defend Recyc in the Alabama lawsuit and to indemnify Recyc if necessary. As with most general liability insurance policies, the Policy here imposes two "separate and independent obligations" on Farmland—a duty to

5

defend and a duty to indemnify. *Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997) (quoting *Capital Ford Truck Sales, Inc. v. U.S. Fire Ins. Co.*, 349 S.E.2d 201, 205 (Ga. Ct. App. 1986), *rev'd on other grounds*, 355 S.E.2d 428 (Ga. 1987)). Farmland must defend Recyc against any "suit" seeking "damages because of 'bodily injury' or 'property damage'" that is covered by the Policy. Policy, ECF No. 7-1 at 25. And Farmland must indemnify Recyc for "those sums that [Recyc] becomes legally obligated to pay . . . because of 'bodily injury' or 'property damage'" that is covered by the Policy. *Id.* Farmland argues that the claims in the underlying Alabama lawsuit are clearly excluded from coverage under the Policy's pollution exclusion, and, therefore, that it owes no duty to defend or indemnify Recyc.

An insurer has a duty to defend its insured if the allegations in the underlying complaint against the insured "even arguably" assert a claim that is covered by the insurance policy, but an insurer has no such duty if the allegations in the underlying complaint and the terms of the policy "unambiguously exclude coverage." *BBL-McCarthy, LLC v. Baldwin Paving Co.*, 646 S.E.2d 682, 685 (Ga. Ct. App. 2007) (first quoting *City of Atlanta v. St. Paul Fire & Marine Ins. Co.*, 498 S.E.2d 782, 784 (Ga. Ct. App. 1998); and then quoting *Penn-Am. Ins. Co.*, 490 S.E.2d at 376). Although the duties to defend and

6

indemnify are independent, neither duty exists if the underlying claims are unambiguously excluded by the policy as a matter of law. *See City of Atlanta*, 498 S.E.2d at 785 (finding that the insurer had no duty to defend or indemnify its insured when the underlying complaint asserted no claim covered by the policy); *see also Shafe v. Am. States Ins. Co.*, 653 S.E.2d 870, 873 (Ga. Ct. App. 2007) (explaining that an insurer's duty to defend is broader than an insurer's duty to indemnify).

The Alabama plaintiffs allege in the underlying action that Recyc stores "chicken waste by-products" in a holding pond and that "noxious odors . . . emanate from the waste pond and travel onto [their] property, thereby interfering with [their] use and enjoyment of their property." Ala. Compl. ¶¶ 3 & 6. It is undisputed that the alleged injury is "property damage" under the Policy. To determine whether the Policy arguably covers or unambiguously excludes this property damage, the Court begins, as it would with any other contract, with the text of the Policy itself. *Ga. Farm Bureau Mut. Ins. Co. v. Smith*, 784 S.E.2d 422, 424 (Ga. 2016) (interpreting nearly identical pollution exclusion); *see also Reed v. Auto-Owners Ins. Co.*, 667 S.E.2d 90, 92 (Ga. 2008) (same). "Words used in the policy are given their 'usual and common' meaning, and the policy 'should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney.'" *Smith*, 784 S.E.2d at 424

7

(internal citation omitted) (quoting *State Farm Mut. Auto. Ins. Co. v. Stanton*, 685 S.E.2d 263, 265 (Ga. 2009)). If the Policy is unambiguous, the Court must apply it as written whether doing so benefits the insurer or its insured. *Id.* But any part of the Policy that "is susceptible to more than one meaning . . . will be construed strictly against the insurer/drafter and in favor of the insured." *Id.* at 424-25. Applying these rules, the Court finds that paragraph (1)(a) of the Policy's pollution exclusion clearly and unambiguously excludes coverage for the claims asserted against Recyc in the underlying action.

Preliminarily, the Court notes that the alleged noxious odors plainly fall within the Policy's unambiguous definition of "pollutants." Summarizing a nearly identical definition of "pollutants," the Georgia Supreme Court determined that "pollutants" included "matter, in any state, acting as an 'irritant or contaminant.'" *Reed*, 667 S.E.2d at 92 (quoting the insurance policy at issue); *cf.* Policy, ECF No. 7-1 at 60 (defining "pollutants"). Here, the noxious odors are irritants or contaminants because the Alabama plaintiffs allege that the odors themselves are causing their injury. *Compare Reed*, 667 S.E.2d at 92 (finding carbon monoxide acted as an "irritant or contaminant" where claimant suffered carbon monoxide poisoning) *with Barrett v. Nat'l Union Fire Ins. Co. of Pitt.*, 696 S.E.2d 326, 329-30 (Ga. Ct. App. 2010) (finding natural gas did not act

8

as an "irritant or contaminant" where claimant was exposed to natural gas but his injury was ultimately caused by oxygen deprivation). Additionally, the odors fall neatly within a defined category of pollutants, "fumes." *See Fume*, Webster's Third New Int'l Dictionary 920 (1993 ed.) (defining "fume" as "a gaseous emission . . . that is usually odorous and sometimes noxious"); *see also Centro Dev. Corp. v. Cent. Mut. Ins. Co.*, No. 17-13489, 2018 WL 1989940, at *1 (11th Cir. Apr. 27, 2018) (per curiam) ("In the case of a pollution exclusion, the pollutant at issue need not be explicitly named in the policy for the exclusion to [unambiguously] apply." (applying Georgia law)).

It is also undisputed that the alleged property damage "aris[es] out of the . . . migration, release or escape," Policy, ECF No. 7-1 at 27, of those noxious odors because it occurs when they "emanate" from the holding pond and "travel" onto the Alabama plaintiffs' property, Ala. Compl. ¶ 6. Finally, the Alabama plaintiffs identify the holding pond as the source of the odors and allege that Recyc rents the land where the holding pond is located. *Id*. ¶¶ 2 & 3. Thus, paragraph (1)(a) of the pollution exclusion, which excludes coverage when the injurious pollutants migrate, release, or escape "from any premises, site or location which is . . . rented" to the insured, Policy, ECF No. 7-1 at 27, plainly applies.

Consequently, the pollution exclusion unambiguously excludes coverage for the claims asserted by the Alabama plaintiffs in the underlying action, and Farmland has no duty to defend or indemnify Recyc for those claims.

The Court is unpersuaded by Recyc's argument that the Policy's fertilizer application endorsement overrides the applicable pollution exclusion. The fertilizer application endorsement modifies specific exclusions in the Policy under certain circumstances. Specifically, the provision Recyc relies on unambiguously states that "*[p]aragraph (1)(d)* of [the pollution exclusion] does not apply to . . . 'property damage' arising out of the application of . . . fertilizers." *Id.* at 62 (emphasis added). Paragraph (1)(d) excludes coverage when the pollutants originate from any "premises, site or location on which [the] insured . . . [is] performing operations." *Id.* at 27. Thus, if Recyc had not purchased the fertilizer application endorsement, claims arising from the application of fertilizer at a location where Recyc is performing operations would arguably be excluded by paragraph (1)(d) of the pollution exclusion. Because Recyc did purchase the endorsement, however, paragraph (1)(d) does not exclude such claims. To illustrate, if Recyc causes damage to a farmer's property through the application of fertilizer on that property, the fertilizer application endorsement prevents paragraph (1)(d) from excluding

the farmer's claim for that damage.  But Farmland does not rely on paragraph (1)(d) of the pollution exclusion; instead, Farmland relies on paragraph (1)(a), which excludes property damage caused by pollutants that migrate, release, or escape "from any premises, site or location which is . . . rented" to the insured.  *Id.*  The fertilizer application endorsement does not modify paragraph (1)(a).  And, as explained above, paragraph (1)(a) unambiguously excludes coverage for the claims asserted by the Alabama plaintiffs.  Consequently, no coverage exists for those claims.

CONCLUSION

Because Recyc's insurance policy with Farmland excludes the claims asserted in the Alabama lawsuit, Farmland has no duty to defend or indemnify Recyc for those claims.  Accordingly, Farmland's motion for judgment on the pleadings (ECF No. 9) is granted.

IT IS SO ORDERED, this 16th day of May, 2018.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA
